**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>       v.<br><br>EDDIE S. RODRIGUEZ-BERRIOS,<br>MARIO J. HERNANDEZ-CARTAGENA,<br>JOSE L. ROMAN-MARTINEZ,<br><br>    Defendants. | CRIMINAL NO. 04-81 (PG) |

**OPINION AND ORDER**

    Before the Court is the government's motion to quash the pretrial subpoena duces tecum served by defendant Mario J. Hernandez on the Puerto Rico Department of Justice, wherein defendant requests any document relating to the local prosecutors' parallel investigation of the crimes charged in this indictment. (Docket No. 160) The Court having carefully considered the government's motion, defendant's response (Docket No. 161), and the applicable law, for the reasons stated hereunder, the government's motion is **GRANTED**.

**I. BACKGROUND**

    On April 14, 2004, defendants were charged by way of superseding indictment with a carjacking in which the victim, Yesenia Ortiz-Acosta, was sexually abused, abducted, and ultimately slain. (Docket No. 25) To date, her body has not been found. The government has certified this case as eligible for a death penalty prosecution in compliance with the Local Rules (Docket No. 27), and is now engaged in the process of obtaining authorization to seek the death penalty.

    On March 15, 2005, defendant Mario J. Hernandez served a subpoena duces tecum under Fed.R.Crim.P. 17(c) on the Puerto Rico Department of Justice ("PRDOJ"), commanding them to produce in this Court on March 22,

Criminal No. 04-81 (PG)                                                  Page 2

2005, the following documents: "all files, and any other document in the Yesenia Ortiz-Acosta case, and in the criminal investigation against Eddie Samir Rodriguez, Mario Hernandez-Cartagena and Jose Roman-Martinez."  (Docket No. 161 at 1)

The PRDOJ notified the government on March 21 of defendant's subpoena and its intent to comply.  Id. at 1.  Later that day, the government proceeded to move for "emergency" quashal on a number of different grounds.  It argued that the subpoena request was overbroad, violative of the Fed.R.Crim.P. 17(h) prohibition on disclosure of witness' statements, and likely to result in the disclosure of privileged attorney work-product.  Id. at 2.  The government also argued that defendant had not requested the Court's authorization under Fed.R.Crim.P. 17(c)(1), and alternatively, if the authorization was requested ex-parte and under seal, the government claimed that the Court should unseal the request so the government could challenge its legality.  Id.

The PRDOJ complied with the subpoena on March 22, leaving the documents under the custody of the Court.  Because of the complex questions raised by defendant's subpoena request, the Court took possession of the PRDOJ's document production, pending its ruling on the government's motion to quash.

Defendant countered that the government has no standing to object to a subpoena served on the PRDOJ.  (Docket No. 161 at 2, filed March 23, 2005)  He also submitted that leave of court is not required for the issuance of a subpoena duces tecum, but that it is discretionary with the Court to require production prior to trial.  Id.  He emphasized that the documents were highly relevant and of significant evidentiary value in light of the fact that defendants have not been indicted by the PRDOJ.  Id. at 3.  Conceding that it was a large request, defendant claimed that he could not adequately prepare for trial without it, and that the

Criminal No. 04-81 (PG)                                                  Page 3

government could not guarantee that this potentially exculpatory information would otherwise be made available.  Id. at 4.

## II. DISCUSSION

Fed.R.Crim.P. 17(c) authorizes subpoenas for the production of books, papers, documents, data or other objects.  It also prescribes a procedure and a standard for challenging such subpoenas: "The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive."  Fed.R.Crim.P. 17(c)(2).

Although leave of Court is not required for issuance of a subpoena duces tecum, the enforcement of a pretrial subpoena duces tecum is committed to the sound discretion of the district court.  U.S. v. Nixon, 418 U.S. 683, 702 (1974); U.S. v. Lieberman, 608 F.2d 889, 904 (1st Cir. 1979).  The party seeking a subpoena duces tecum pursuant to Rule 17(c) must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition.

Nixon, 418 U.S. at 699-700 (citing United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)(per Weinfeld, J.)).  In order to meet this burden, the defendant must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity."  Nixon, 418 U.S. at 700; Stern v. U.S. Dist. Court for Dist. of Mass., 214 F.3d 4, 17 (1st Cir. 2000).

Rule 17(c) was never intended to double as another mechanism for discovery.  Nixon, 418 U.S. at 698; Bowman v. Dairy Co. V. U.S., 341 U.S. 214, 220 (1951).  "Courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation

Criminal No. 04-81 (PG)                                                  Page 4

of discovery in criminal cases found in Fed.R.Crim.P. 16." <u>U.S. v. Cuthbertson</u>, 630 F.2d 139, 146 (3rd Cir. 1980), <u>cert. denied</u>, 449 U.S. 1126 (1981).

The Court begins with defendant's contention that the government lacks standing to move for quashal because it possesses no privilege affected by the pre-trial document production.  Indeed, the asserted work-product privilege would belong to the local prosecutors.  No other privileges were raised, although others such as the informer's privilege come to mind.  <u>See</u> <u>U.S. v. Cintolo</u>, 818 F.2d 980, 1002 n.13 (1st Cir. (1987)(citing <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957)).

Although the standing argument is alluring, it is ultimately unpersuasive.  The Supreme Court has emphasized the trial court's responsibility to prevent abuses of Rule 17(c): "[T]he burden is on the court to see that the subpoena is good in its entirety and it is not upon the [subpoenaed party] to cull the good from the bad."  <u>See</u> <u>U.S. v. Beckford</u>, 964 F.Supp. 1010, 1025 (E.D.Va. 1997)(quoting <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 221 (1951)).  That burden should not be shifted to the opposing party to move to vacate the subpoena, particularly if the opposing party has no reason to know of the issuance of the subpoena.  <u>See</u> <u>Beckford</u>, 964 F.Supp. at 1025 (citation omitted). "The Court has an interest in preserving the proper procedure prescribed by the Rules of Criminal Procedure, irrespective of the desires of the parties."  <u>Id.</u>

It is thus within the Court's power and discretion to quash a subpoena that fails to comply with Rule 17(c), regardless of whether the moving party has standing.  The subpoena duces tecum at issue here, as summarized by defendant, requests "copy of all files, and any other document in the Yesenia Ortiz-Acosta case, and in the criminal investigation against Eddie Samir Rodriguez-Berrios, Mario Hernandez-Cartagena and Jose Roman-Martinez."  (Docket No. 161 at 1)

Criminal No. 04-81 (PG)                                                  Page 5

While the request is clearly relevant to the defendant and his case, the evidentiary value of the requested materials is questionable at this overearly stage. As the prosecution noted, the request is likely to contain witness statements. Not only are such witness statements protected from early disclosure under the Jencks Act, 18 U.S.C. § 3500, Fed.R.Crim.P. 26.2, and Fed.R.Crim.P. 17(h), such statements ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial. See Nixon, 418 U.S. at 701; Cuthbertson, 630 F.2d at 144-145.

Furthermore, in order to obtain pretrial access to such materials via a Rule 17(c), it is not enough that the documents have some potential for relevance and evidentiary use. They must be admissible in evidence. Nixon, 418 U.S. at 700. Defendant has not even argued the point.

The Court does not deny that the information requested is probably not "otherwise procurable reasonably in advance of trial by exercise of due diligence." Id. at 699-700. However, defendant's conclusory assertion that he cannot properly prepare for trial without such advance production does not entitle him to the materials. Defendant must establish a specific need, and the general assertion that the materials are useful is simply not enough. See United States v. Eden, 659 F.2d 1376 (9th Cir. 1981) (subpoena properly quashed where showing of need amounted only to conclusory statements about relevance). The Court also notes that defendants are all participating in Rule 16 discovery, which will yield them the raw materials necessary for their defense.

Worse yet, defendant's request is of such broadness that he de facto fails the specificity requirement. See Nixon, 418 U.S. at 699-700. His blunderbuss request for all the files relating to the PRDOJ's investigation of the victim's death reveals nothing more than the general fishing expedition prohibited by Nixon. Courts have held that requests for an entire file are evidence of an impermissible fishing expedition.

Criminal No. 04-81 (PG)                                                    Page 6

See e.g. United States v. Reed, 726 F.2d 570, 577 (9th Cir. 1984); U.S. v. Morris, 287 F.3d 985, 991 (10th Cir. 2002). In sum, such a broad request cannot be considered a good faith effort to access specific evidence.

Defendant's argument that there must be exculpatory material within the file because the PRDOJ has not yet indicted him is sheer speculation, and as such, it does not entitle him to any specific information in the PRDOJ's possession. His related claim that the prosecution cannot guarantee that there is no exculpatory material in the hands of the PRDOJ also fails. While the prosecution has an obligation to disclose all material that tends to exculpate defendant under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, Brady does not require the government, once it knows the local police are also investigating, to contact the local police, obtain a complete copy of the investigative file, and turn any exculpatory material over to the defense. U.S. v. Rodriguez-Marrero, 390 F.3d 1, 30 (1st Cir. 2004).[1]

Where the district court finds a subpoena to be so lacking in specificity, it need not conduct an *in camera* inspection of the requested materials to search for exculpatory evidence. See Morris, 287 F.3d at 991 (quoting United States v. Arditti, 955 F.2d 331, 347-48 (5th Cir. 1992) (Goldberg, J., concurring)). This Court is therefore under no obligation to examine the PRDOJ's document production before quashing the subpoena, and it declines to do so.

---

[1] More pointedly, the United States has no duty to investigate whether any Brady material exists in the hands of the local authorities in the absence of a joint prosecution. See Rodriguez-Marrero, 390 F.3d at 30 (but comparing Kyles v. Whitley, 514 U.S. 419, 437 (1995), as holding that "individual prosecutors have the duty to learn about evidence known to others acting on the government's behalf"). There was no such joint prosecution in this case.

### III. CONCLUSION

A Rule 17(c) subpoena duces tecum is not a substitute for Rule 16 discovery, and the Court refuses to endorse defendant's thinly-veiled fishing expedition. Inasmuch as defendant has failed to satisfy the requirements set forth in Rule 17(c) and U.S. v. Nixon, 418 U.S. 683 (1974), the government's motion for quashal (Docket No. 160), is **GRANTED**. The PRDOJ having deposited the improperly subpoenaed materials with the Court, it may retrieve them in Chambers.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 9, 2005.

S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE