IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.                                         CRIM. NO.: 04-081 (SCC)

EDDIE S. RODRÍGUEZ-BERRIOS,

Defendant.

**OPINION AND ORDER**

On September 13, 2006, a jury found Defendant Eddie S. Rodríguez-Berrios ("Defendant Rodríguez-Berrios") guilty of committing a carjacking that resulted in the death of Ms. Yesenia Ortiz-Acosta ("Ms. Ortiz-Acosta"), his ex-wife, in violation of 18 U.S.C. § 2119(3). He was subsequently sentenced to a term of life imprisonment and to five years of supervised release. *See* Docket Nos. 539-540. He now moves the Court to grant him compassionate release pursuant to 18

U.S.C. § 3582(c)(1)(A). Docket Nos. 582.[1] The motion is accompanied with a request for the Court to appoint a Federal Public Defender to represent him in these proceedings. Docket No. 582-1 at pgs. 7-8. The Government opposed the motion, *see* Docket No. 588[2] and Defendant Rodríguez-Berrios replied, *see* Docket No. 592. For the reasons set forth below, the Court **DENIES** Defendant Rodríguez-Berrios' request.

## I.   REQUEST FOR APPOINTMENT OF COUNSEL

Defendant Rodríguez-Berrios asks the Court to appoint a Federal Public Defender to assist him in all matters pertaining to his request for compassionate release. But "[t]here is no right to counsel in postconviction proceedings." *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019); *see also United States v. Blake*, 986 F.3d 756, 758 (7th Cir. 2021) (noting that "District judges

---

[1] The Memorandum in Support of the request was filed at Docket No. 582-1.

[2] At Docket No. 589, the Government filed an Informative Motion acknowledging that it had filed its opposition to Defendant Rodríguez-Berrios motion after the deadline to do so. The Court noted the Government's explanation for its oversight, *see* Docket No. 590, and considered the Government's opposition as part of our analysis.

have discretion to recruit and sometimes appoint counsel for prisoners seeking post judgment benefits, *see United States v. Guerrero*, 946 F.3d 983, 985 (7th Cir. 2020), but prisoners do not have a constitutional or statutory entitlement to appoint counsel."). Therefore, it is entirely within the Court's discretion to appoint counsel at this juncture. Here, Defendant Rodríguez-Berrios contends that he requires the assistance of a Federal Public Defender to procure and obtain "records as well as medical records." Docket No. 582-1 at pgs. 7-8.

The Court is aware that defendants must go through multiple hoops to obtain the records and documents that they will use to substantiate the motions that they file before the Court when they are appearing *pro se*, as is the case here, and are not represented by counsel. Nevertheless, Defendant Rodríguez-Berrios has not informed the Court of his efforts to independently seek the "records and medical records" that he now says he requires or how those efforts were frustrated. He merely states that he "has been unable to obtain his medical

records from the BOP." Docket Nos. 582-1 at pg. 7 n. 2[3] and 582-5 at ¶ 2. That, however, is not enough information for the Court to go on, and it is at odds with the extensive and comprehensive petition that Defendant Rodríguez-Berrios was able to prepare and file before this Court.

After having evaluated this request, the Court will not exercise its discretion to appoint a Federal Public Defender to represent Defendant Rodríguez-Berrios in these proceedings.[4] The Court next turns to Defendant Rodríguez-Berrios petition for compassionate release.

---

[3] Defendant Rodríguez-Berrios argues that the Government "does not want the Court to see" his medical records. Docket No. 592 at pg. 3. Albeit this argument, Defendant Rodríguez-Berrios has not shown a pattern or even a hint of obstructionist behavior from either the Government or the BOP regarding the release of his medical records.

[4] In his Reply at Docket No. 592 at pg. 8, Defendant Rodríguez-Berrios adds that if counsel is appointed to represented him, the information regarding his family circumstances could be corroborated. Despite having considered this additional argument, the Court will not disturb its ruling regarding its decision to not appoint a Federal Public Defender, or any counsel for that matter, to represent Defendant Rodríguez-Berrios in these proceedings.

## II. REQUEST FOR COMPASSIONATE RELEASE

### a. *Exhaustion of Administrative Remedies*

The Court may consider a motion for compassionate release which was filed by a defendant, "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582 (c)(1)(A).[5] Here, Defendant Rodríguez-Berrios filed a request for compassionate release with the warden at FCI Pekin, the facility where he is currently serving his sentence. The warden denied his request. *See* Docket No. 582-3. In its Opposition, the Government does not contest that Defendant

---

[5] The First Circuit recently clarified that compliance with this administrative prerequisite is not jurisdictional. *See United States v. Texeira-Nieves,* 23 F.4th 48, 53 (1st Cir. 2022) (explaining that "[t]he administrative exhaustion requirement in section 3582(c)(1)(A) neither 'speak[s] in jurisdictional terms' nor 'refer[s] in any way to the [court's] jurisdiction.'" (quoting *Zipes v. Trans. World Airlines, Inc.,* 455 U.S. 385, 394 (1982)).

Rodríguez-Berrios satisfied the administrative exhaustion requirement. *See* Docket No. 588 at pg. 12. Accordingly, the Court finds that Defendant Rodríguez-Berrios has satisfied that requirement and turns to the merits of Defendant Rodríguez-Berrios' petition.

### b. *Extraordinary and Compelling Circumstances*

When considering a motion for compassionate release based on the existence of extraordinary and compelling circumstances, the Court must first determine whether the defendant has advanced extraordinary and compelling circumstances which call for a sentence reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. 3582(c)(1)(A)(ii). But the First Circuit recently held that the Sentencing Commission's current policy statement that applies to motions for compassionate release does not apply to defendant initiated petitions. *See United States v. Ruvalcaba*, 26 F.4th 14, 23 (1st Cir. 2022). The First Circuit determined that when a district court is adjudicating a defendant initiated

petition for compassionate release, as is the case here, the district court has the "discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release." *Id.* That is, since the Court is not bound by the policy statement when evaluating defendant initiated petitions for compassionate release, the Court may consider additional "extraordinary and compelling" circumstances advanced by a defendant outside of those listed in the policy statement.[6]

Defendant Rodríguez-Berrios anchors his petition for compassionate release to five arguments which he understands are "extraordinary and compelling" circumstances which would pave the way for him to be sentenced to time served. Specifically, Defendant Rodríguez-Berrios avers that he: (1) is suffering from "long COVID"; (2)

---

[6] The Court may still consider the Sentencing Commission's policy statement as a "non-binding reference." *United States v. Ruvalcaba,* 26 F.4th 14, 23 (1st Cir. 2022).

is being subjected to harsh prison conditions; (3) has already served what he deems is a considerable amount of time of his life sentence; (4) has rehabilitated himself; and (5) is the only available caregiver for his mother and aunt, since both women are reportedly gravely ill.

First, the Court entertains Defendant Rodríguez-Berrios' "long COVID" argument. Defendant Rodríguez-Berrios informs that he contracted COVID at some point in December 2020. *See* Docket Nos. 582-1 at pg. 9 and 592-1 at pg. 1. He argues that he is still experiencing symptoms associated with having contracted the virus. Those symptoms include: (1) high blood pressure and difficulty breathing; (2) numb arms when sleeping; (3) dizziness; and (4) blurred vision. *Id.* And even though Defendant Rodríguez-Berrios was administered the COVID-19 vaccine on April 15, 2021, *see* Docket No. 592-1 at pg. 1, considering the new strains of the virus, he sustains that the risk of reinfection is high, *see* Docket No. 582-1 at pgs. 9-10.

The Court does not pretend to downplay Defendant Rodríguez-Berrios' symptoms or his concerns regarding reinfection. In this case, however, Defendant Rodríguez-Berrios has not demonstrated or even alleged that he is not being treated for his symptoms or that the care that he is receiving falls short of what he requires. To the contrary, while the medical records that have been submitted to this Court, *see* Docket No. 592-1, confirm that he is suffering from the symptoms he describes, the records also happen to confirm that he is being treated for those symptoms.

Therefore, because Defendant Rodríguez-Berrios has not provided the Court with information that would show that he is not receiving the medical attention that he is entitled to, *see Estelle v. Gamble,* 429 U.S. 97, 103 (1976), rather, he has shown that he is receiving medical care for his symptoms, the Court does not find that, in this context, his symptoms are "extraordinary and compelling" circumstances which would move this Court to grant him compassionate release.

Second, the Court considers Defendant Rodríguez-Berrios harsh prison conditions argument. The impact of the on-going COVID-19 pandemic on our society is unquantifiable. And there is no doubt that albeit the BOP's response to this pandemic, correctional facilities have been hit particularly hard by the pandemic. Here, Defendant Rodríguez-Berrios argues that "[d]uring the Covid-19 pandemic, [he] ha[s] endured unusually harsh conditions of confinement not foreseen by the Court at sentencing. These conditions include prolonged lockdowns, lack of recreational and educational opportunities, and the ability to visit with family." *See* Docket No. 582-5 at ¶ 4. He also notes that "FCI Pekin is operating at a Level 3 Modified Operational Level as a result of a nationwide surge of COVID-19 cases resulting from the omicron variant." *See* Docket No. 592 at pg. 5. But while it is true that the COVID-19 pandemic has resulted in certain restrictions, Defendant Rodríguez-Berrios' statements regarding the measures imposed to combat the spread of the virus do not provide sufficient factual information to shed

light on the specific harsh conditions at FCI Pekin. Further, as of June 30, 2022, the BOP website reflects that there are no positive COVID-19 cases of staff or inmates at FCI Pekin. *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last updated June 30, 2022). Accordingly, the Court does not find that this argument satisfies the "extraordinary and compelling" circumstances requirement.

Third, the Court addresses Defendant Rodríguez-Berrios' arguments concerning both the length of time that he has already served and his rehabilitation efforts. Defendant Rodríguez-Berrios has served a little over eighteen (18) years of a life sentence. He adds that, during this time, he has made considerable efforts to rehabilitate himself, he "is very remorseful about his past conduct and actions, and he apologizes to his family as well as society at large," *see* Docket No. 582-1 at pg. 13, and "he unequivocally accepts responsibility for his conduct," *id.* at pg. 2.

While the Court finds that Defendant Rodríguez-Berrios'
rehabilitation efforts[7] are encouraging, the Court does not
find that they are enough to check off the "extraordinary and
compelling" circumstances box. Further, the case law that he
has cited to in support of the proposition that compassionate
release has been granted to individuals serving life sentences
can be distinguished from the instant case.[8]

Defendant Rodríguez-Berrios also reasons that his life
sentence "exceeds the average prison sentence imposed
nationally for murder." Docket No. 582-1 at pg. 4. But §
2119(3) explicitly states that the individual found guilty of
that offense could be "fined under this title or imprisoned for
any number of years up to life, or both, or sentenced to

---

[7] Defendant Rodríguez-Berrios attached to his compassionate release
motion, copies of the courses he has taken while imprisoned, *see* Docket
No. 582-9 and his BOP pattern score, *see* Docket No. 582-10.

[8] For example, Defendant Rodríguez-Berrios cited to a case in which a
defendant was in fact serving a life sentence, however, he was diagnosed
with metastatic prostate cancer and had less than a year to live. *See United
States v. Tidwell*, 476 F.Supp.3d 66 (E.D. Pa. 2020). But such is not the case
here. The Court notes that Defendant Rodríguez-Berrios used the
LexisNexis cite for the *Tidwell* case. *See* Docket No. 582-1 at pg. 3.

death." *See* 18 U.S.C. § 2119(3). As such, his sentence was well within the confines of what the statute provides. Therefore, the Court does not find that these reasons rise to the level of "extraordinary and compelling" circumstances contemplated by § 3582(c)(1)(A)(i).

Lastly, the Court evaluates Defendant Rodríguez-Berrios' argument that he is the only person that can care for his mother and aunt. In support of this, argument, he has attached copies of a letter reportedly written by his mother and a sworn statement executed by his aunt. *See* Docket Nos. 582-6 and 582-7. His mother's letter states that she is disabled, lives alone, and requires assistance getting to and from medical appointments. *See* Docket No. 582-6. She adds that, if Defendant Rodríguez-Berrios is released, he would be able to live with her, handle all housekeeping related matters and tend to her medical needs. *Id.* His aunt's sworn statement reveals that she suffers from multiple medical conditions, which she lists, and that she lives in a remote area that does not have public transportation. *See* Docket No. 582-7. She

adds that her home is deteriorating, and she does not have anybody to assist her with the upkeep of the home. *Id.* She also alleges that prior to being convicted, Defendant Rodríguez-Berrios used to help her, so if he were released, he would be able to once again do so. *Id.*

In support of the proposition that serving as the "only available caregiver" qualifies as an "extraordinary and compelling" circumstance, Defendant Rodríguez-Berrios cited to, *inter alia, United States v. Bucci,* 409 F.Supp.3d 1 (D. Mass. 2019).[9] The *Bucci* decision was issued prior to the First Circuit's *Ruvalcaba* opinion, but it already hinted at what was to come since in that case, a judge from the District Court of Massachusetts granted a motion for compassionate release after considering an "extraordinary and compelling" circumstance that fell outside of those listed in the Sentencing Commission's policy statement. Specifically, the judge in the *Bucci* case noted that even though the policy statement speaks

---

[9] The Court notes that in his motion, Defendant Rodríguez-Berrios cited to the LexisNexis case cite. *See* Docket No. 582-1 at pg. 13.

about a defendant serving as the "only available caregiver" for a spouse or registered partner, because the Court was not bound by the policy statement, if a defendant was the "only available caregiver" to his ill mother, that was also an "extraordinary and compelling" circumstance. *See Bucci*, 409 F.Supp.3d at 2-3.

The *Bucci* decision, however, does not offer much insight as to the particular circumstances of the defendant that benefitted from that decision or the documents that the Court considered to issue its determination. The Court notes that, in the instant case, the Presentence Investigation Report ("PIR") prepared by the United States Probation Office shows that Defendant Rodríguez-Berrios has several siblings. *See* Docket No. 531 at ¶ 41. Interestingly, neither the letter written by Defendant Rodríguez-Berrios' mother, nor the sworn statement executed by the aunt, mention these siblings. The PIR, however, was prepared in 2007 and the only "current" information regarding Defendant Rodríguez-Berrios' siblings is his assertion that, "all [his] other relatives and friends are

busy with their own families," *see* Docket No. 582-5 at ¶ 7 and
several pictures of his siblings visiting him at prison, s*ee*
Docket No. 582-4 at pgs. 2-3. The Court has not been provided
with additional information regarding the current
whereabouts of Defendant Rodríguez-Berrios' siblings, *e.g.*, if
they are living in Puerto Rico, but they do appear to be living
in the free community and could very well attempt to
establish some type of support network to assist Defendant
Rodríguez-Berrios' mother and aunt.

More fundamentally, the record is devoid of any mention
of prior efforts by Defendant Rodríguez-Berrios or other
family members, to seek assistance for his mother and aunt,
prior to having represented that he is the "only available
caregiver."[10] Accordingly, the Court does not find that
Defendant Rodríguez-Berrios has advanced "extraordinary

---

[10] Further, Defendant Rodríguez-Berrios submitted over two hundred
letters in support of his release. *See* Docket No. 582-12. It is rather difficult
to believe that none of those individuals would be able to lend a helping
hand or that they have not offered to help Defendant Rodríguez-Berrios'
mother or aunt.

and compelling" circumstances that call for this Court to grant his request for compassionate release.

### c.   Section 3553(a) Factors

When the extraordinary and compelling circumstances threshold hurdle is cleared, the defendant is tasked with persuading the Court "that the section 3553(a) factors weigh in favor of a sentence reduction." *United States v. Texeira-Nieves*, 23 F.4th 48, 54-55 (1st Cir. 2022). But when a Court determines that the extraordinary and compelling circumstances requirement was not met, as the Court has determined here, the Court need not consider the § 3553(a) factors and the analysis may end there.[11] *Id.* at 52. The First Circuit, however, has advised that its "review is aided, though, when the district court takes the additional step of making 3553(a) determinations." *Id.* Considering that the

---

[11] The First Circuit has pointed out that a denial of a motion for compassionate release "may be affirmed solely on the basis of its supportable determination that the section 3553(a) factors weigh against the granting of such relief." *Texeira-Nieves,* 23 F.4th at 55.

Parties briefed the Court as to these factors, the Court will heed the First Circuit's recommendation and conduct a § 3553(a) analysis.[12]

When considering these factors, the Court "need not tick off each and every factor in a mechanical sequence." *United States v. Saccoccia,* 10 F.4th 1, 10 (1st Cir. 2022). Here, the Court places particular emphasis on the nature and circumstances of the offense. As noted, Defendant Rodríguez-Berrios was convicted of committing a carjacking that resulted in the death of his ex-wife, Ms. Ortiz-Acosta. To date, her body has not been found. And while Defendant Rodríguez-Berrios has stated that he apologizes to his family, to society as a whole and takes responsibility for his actions, *see* Docket No. 582-1 at pgs. 2 and 13, there is no mention of Ms. Ortiz-Acosta's family, or the daughter that he procreated with Ms. Ortiz-

---

[12] While the current presiding judge was not the sentencing judge, she does have the benefit of a complete record, including the multiple post-conviction motions for relief filed by Defendant Rodríguez-Berrios and the First Circuit's opinion affirming Defendant Rodríguez-Berrios conviction, *see United States v. Rodríguez-Berrios,* 573 F.3d 55 (1st Cir. 2009).

Acosta, or any specific mention of the crime for which he was convicted.

Additionally, as discussed above, § 2119(3) states that if death results from a carjacking, as was the case here, the defendant may be imprisoned for up to life or be sentenced to death. *See* 18 U.S.C. § 2119(3). Here, Defendant Rodríguez-Berrios was sentenced to life and the Court does not find, at this juncture, that having served only eighteen (18) years of a life sentence aligns with the severity of the offense for which he was convicted.

The Court does, however, encourage Defendant Rodríguez-Berrios to continue his good behavior while imprisoned and to take advantage of the educational and vocational opportunities available to him.

### III. FINAL LOOSE END: HOME CONFINEMENT

The Government opposes Defendant Rodríguez-Berrios' request to modify his supervised release term to include home confinement. Docket No. 588 at pgs. 27-28. In his Reply, Defendant Rodríguez-Berrios countered that other courts

have allowed defendants to complete their supervised release while in home confinement. Docket No. 592 at pgs. 9-10.

By denying Defendant Rodríguez-Berrios' request for compassionate release, the Court ruled that his sentence will not be reduced to time served. As such, he will not be released to begin his term of supervised release. Meaning that, at this stage, any discussions regarding Defendant Rodríguez-Berrios' term of supervised release, let alone where he will spend that time, would be a sleeveless errand. In any event, as the Government points out, while the Court may recommend that a defendant be placed in a particular facility or program, the BOP is the entity responsible for determining where a defendant is placed. *Tapia v. United States*, 564 U.S. 319, 331 (2011) (stating that "[a] sentencing court can *recommend* that the BOP place an offender in a particular facility or program . . . [b]ut decision making authority rests with the BOP."). Albeit the Court's ability to issue such a recommendation to the BOP to place Defendant Rodríguez-

Berrios in home confinement, the Court sees no reason to do so here.

### IV. CONCLUSION

Wherefore, Defendant Rodríguez-Berrios' petition for compassionate release at Docket No. 582 is **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of July 2022.


S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE